**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | |
|---|---|
| **REPUBLIC ROOFING & RESTORATION, LLC and ANNIE CHANDLER, individually and on behalf all others similarly situated,** | |
| **Plaintiffs,** | **Civil Action No. _____** |
| | **JURY DEMANDED** |
| **v.** | |
| **NATIONAL SECURITY FIRE & CASUALTY COMPANY,** | |
| **Defendant.** | |

---

**CLASS ACTION COMPLAINT**

---

COME NOW the Plaintiffs, Republic Roofing & Restoration, LLC (hereinafter "Republic") and Annie Chandler (hereinafter "Chandler") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, and state and allege the following for their Complaint against National Security Fire & Casualty Company (hereinafter "National Security"):

**PARTIES, RESIDENCY, JURISDICTION AND VENUE**

1.     Plaintiff Republic is a limited liability corporation existing under the laws of the State of Tennessee, with its headquarters located at 91 Peyton Parkway Suite 101, Collierville, Tennessee.  Republic is a single-member limited liability company, and its only member is a resident of the State of Tennessee.

2.     Plaintiff Republic was assigned the rights and benefits associated with the insurance claim that is the subject of this action by Richard Mauppins (hereinafter "Mauppins").  At all times

relevant hereto, Mauppins owned a dwelling located at 124 English Street, Halls, Tennessee, located in Lauderdale County, Tennessee (the "Maupin Premises").

3.      Plaintiff Chandler is a citizen and resident of Prairie, Mississippi.  At all times relevant hereto, Chandler owned a home located at 9645 Lenoir Lane, Prairie, MS, located in Monroe County, Mississippi (the "Chandler Premises").

4.      Defendant National Security is organized under the laws of the State of Alabama with its principal place of business in Elba, Alabama.  National Security is authorized to sell property insurance policies in the State of Tennessee, and is engaged in the insurance business in the State of Tennessee, including issuing insurance policies covering property in Lauderdale County.

5.      The events giving rise to Plaintiff Republic's individual claims that are the subject of this action occurred in the Western Division of the Western District of Tennessee.

6.      On information and belief, this Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

7.      This Court has personal jurisdiction over National Security because it has availed itself of the privilege of conducting business and issuing insurance contracts covering structures in the State of Tennessee.

## FACTS

### A.  The Property Insurance Policies and Casualty Losses

8.      National Security is a regional insurer specializing in providing property coverage for homes and mobile homes.

9.      National Security sells its property insurance policies in, *inter alia*, the States of Arkansas, Mississippi and Tennessee.

10.     National Security property insurance forms sold in Arkansas, Mississippi and Tennessee are materially identical as it relates to the contractual dispute set forth herein.

11.     The laws in the States of Arkansas, Mississippi and Tennessee are materially identical as it relates to the contractual dispute set forth herein.

12.     Mauppins was insured pursuant to an insurance contract whereby National Security agreed to insure, *inter alia,* Mauppins' property located on the Mauppins Premises against property damage, bearing Policy No. 848625-221091 (the "Mauppins Policy").

13.     Chandler was insured pursuant to an insurance contract whereby National Security agreed to insure, *inter alia,* Chandler's property located on the Chandler Premises against property damage, bearing Policy No. 1191888-615160 (the "Chandler Policy").

14.     The Mauppins Policy and the Chandler Policy (collectively, the "Policies") provided insurance coverage for direct physical loss to the residence and structures located on the Mauppins Premises and the Chandler Premises (collectively, the "Insured Premises"), except as specifically excluded or limited by the Policies.

15.     This lawsuit only concerns property insurance coverage for buildings, and *not* personal contents, such as clothes and furniture.

16.     Pursuant to the Mauppins Policy, Mauppins paid National Security premiums in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

17.     On or about April 24, 2019, Mauppins' dwelling located on the Mauppins Premises suffered direct physical loss caused by covered named peril(s) (the "Mauppins Loss").

18.     The Mauppins Policy was in effect at the time of the Mauppins Loss, and the Mauppins Loss is compensable under the terms of the Policy.  As it relates to the Mauppins Loss, there is no applicable exclusion.

19.     Mauppins promptly notified National Security of the Mauppins Loss and made a claim against the Mauppins Policy.

20.     After its inspection, National Security determined that the Mauppins Loss was covered by the terms of the Mauppins Policy.

21.     National Security calculated its actual cash value ("ACV") payment obligation to Mauppins by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

22.     The Mauppins Policy, and the other property forms at issue in this pleading, do not permit the withholding or deduction of labor as depreciation as described below.

23.     On or about July 2, 2019, Mauppins assigned his insurance claim to Plaintiff Republic, via a document titled Assignment of Claim and Benefits (the "Assignment"). The Assignment assigned and transferred "any and all claims, demands, and cause or causes of action of any kind whatsoever" against Defendant for the claims asserted herein.

24.     Pursuant to the Chandler Policy, Chandler paid National Security premiums in exchange for insurance coverage.  The required premiums were paid at all times relevant to this Complaint.

25.     On or about December 4, 2017, Chandler's dwelling located on the Chandler Premises suffered direct physical loss caused by covered named peril(s) (the "Chandler Loss").

26.    The Chandler Policy was in effect at the time of the Chandler Loss, and the Chandler Loss is compensable under the terms of the Policy.  As it relates to the Chandler Loss, there is no applicable exclusion.

27.    Chandler promptly notified National Security of the Chandler Loss and made a claim against the Chandler Policy.

28.    After its inspection, National Security determined that the Chandler Loss was covered by the terms of the Chandler Policy.

29.    National Security calculated its actual cash value ("ACV") payment obligation to Chandler by first estimating the cost to repair or replace the damage with new materials (replacement cost value, or "RCV"), then subtracted depreciation.

30.    The Chandler Policy, and the other property forms at issue in this pleading, do not permit the withholding or deduction of labor as depreciation as described below.

**B.  National Security's Calculation of Mauppins' and Chandler's ACV Payments**

31.    In adjusting Mauppins' and Chandler's claims, National Security affirmatively and unilaterally chose to use a "replacement cost less depreciation" methodology to calculate the loss and make its ACV payment.

32.    National Security used commercially-available computer software to make its RCV, depreciation, and ACV calculations.  National Security uses this software to calculate RCV, depreciation, and ACV.

33.    On or about May 17, 2019, National Security calculated the RCV of Mauppins' damaged property at $10,949.54.

34.    National Security then used the same software to calculate the depreciation for Mauppins' damaged property at $4,836.26.

35.     Mauppins was underpaid on his ACV claim as more fully described below.

36.     On or about December 26, 2017, National Security calculated the RCV of Chandler's' damaged property at $11,677.91.

37.     National Security then used the same software to calculate the depreciation for Chandler's damaged property at $840.63.

38.     Chandler was underpaid on her ACV claim as more fully described below.

**C.  National Security's Practice Of Withholding Labor As Depreciation**

39.     When it calculated Mauppins' and Chandler's ACV benefits owed under the Policies, National Security withheld costs for both materials and the labor required to repair or replace respective properties as depreciation, even though labor does not depreciate in value over time.  National Security withheld labor costs throughout its ACV calculations as depreciation. National Security also withheld labor costs as depreciation for other work necessary to repair and replace Mauppins' and Chandler's properties.

40.     Like all property insurance claims estimating software, the specific commercial claims estimating software used by National Security allows for the depreciation of materials only or the depreciation of both material and labor in its depreciation setting preferences.

41.     In this pleading, whenever reference is made to withholding "labor" as depreciation, "labor" means intangible non-materials, specifically including both the labor costs and the laborers' equipment costs and laborers' overhead and profit necessary to restore  property to its condition immediately prior to the loss, as well as removal costs to remove damaged property, under commercial claims estimating software.

42.     National Security's withholding of labor costs as depreciation associated with the repair or replacement of Mauppins' and Chandler's property resulted in Mauppins and Chandler

receiving payment for their losses in an amount less than they was entitled to receive under the Policies. National Security breached its obligations under the Policies by improperly withholding the cost of labor as depreciation.

43.    Plaintiffs cannot determine the precise amount of labor that has been withheld based only upon the written estimate provided. To determine the precise amount of labor withheld, it is necessary to have access to the commercial property insurance program at issue, as well as the electronic file associated with his estimate.

44.    While an insurer may lawfully depreciate material costs when calculating the amount of an ACV payment owed to an insured, it may not lawfully withhold repair labor as depreciation under National Security's policy forms at issue in Arkansas, Mississippi and Tennessee. National Security's failure to pay the full cost of the labor necessary to return Mauppins and Chandler back to their pre-loss condition left Mauppins and Chandler under-indemnified and underpaid for their losses.

45.    National Security materially breached its duty to indemnify Mauppins and Chandler by withholding labor costs associated with repairing or replacing Mauppins' and Chandler's property in its ACV payment as depreciation, thereby paying Mauppins and Chandler less than they were entitled to receive under the terms of the Policies.

**AMOUNT IN CONTROVERSY**

46.    Upon information and belief, the amount in controversy with respect to the proposed class exceeds $5,000,000, exclusive of interest and costs.

**CLASS ACTION ALLEGATIONS**

47.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this lawsuit as a class action on behalf of themselves and on behalf of all others similarly situated. This

action satisfies the requirements of numerosity, commonality, typicality, and adequacy of representation.  Only to the extent it is a requirement under applicable law, the proposed class herein are ascertainable.

48.    The proposed class that Plaintiffs seek to represent is defined as follows:

> All National Security policyholders (or their lawful assignees) who made: (1) a structural damage claim for property located in the States of Arkansas, Mississippi or Tennessee; and (2) which resulted in an actual cash value payment during the class period from which non-material depreciation was withheld from the policyholder; or which should have resulted in an actual cash value payment but for the withholding of non-material depreciation causing the loss to drop below the applicable deductible, for the maximum limitations period as may be allowed by law and arguments of counsel.
>
> The class also excludes any claims for which the applicable limits of insurance have been exhausted.

49.    Plaintiffs reserve the right to amend the definition of the proposed class through discovery. The following persons are expressly excluded from the class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; and (3) the Court to which this case is assigned and its staff.

50.    Members of the putative class as defined all have Article III standing as all such persons and entities, at least initially, received lower claim payments than permitted under the policy.  Certain amounts initially withheld as labor may be later repaid to some policyholders with replacement cost provisions in their policy, if any.  However, policyholders who have been subsequently repaid for initially withheld labor still have incurred damages, at the least, in the form of the lost "time value" of money during the period of withholding, *i.e*., statutory prejudgment interest on the amounts improperly withheld, for the time period of withholding.

51.    The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiffs reasonably believe that hundreds or thousands of people geographically

dispersed across Arkansas, Mississippi and Tennessee have been damaged by National Security's actions. The names and addresses of the members of the proposed class are readily identifiable through records maintained by National Security or from information readily available to National Security.

52.     The relatively small amounts of damage suffered by most members of the proposed class make filing separate lawsuits by individual members economically impracticable.

53.     National Security has acted on grounds generally applicable to the proposed class in that National Security has routinely withheld labor costs as described herein in its adjustment of property damage claims under its policies of insurance. It is reasonable to expect that National Security will continue to withhold labor to reduce the amount it pays to its insureds under these policies absent this lawsuit.

54.     Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting only individual members. The questions of law and fact common to the proposed class include, but are not limited to:

    a.  Whether National Security's policy language allows it to withhold labor costs in its calculation of ACV payments;

    b.  Whether National Security's policy language is ambiguous;

    c.  Whether National Security's withholding of labor costs in its calculation of ACV payments breaches the insurance policies;

    d.  Whether National Security has a custom and practice of withholding labor costs in its calculation of ACV payments;

    e.  Whether Plaintiff and members of the proposed class have been damaged as a result of National Security's withholding of labor costs in its calculation of ACV payments; and

    f.  Whether Plaintiff and members of the proposed class are entitled to a declaration, as well as potential supplemental relief, under the Declaratory Judgment Act.

55.    Plaintiffs' claims are typical of the claims of the proposed class members, as they are all similarly affected by National Security's custom and practice concerning the withholding of labor. Further, Plaintiffs' claims are typical of the claims of the proposed class members because their claims arose from the same practices and course of conduct that give rise to the claims of the members of the proposed class and are based on the same factual and legal theories.  Plaintiffs are not different in any material respect from any other member of the proposed class.

56.    Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the proposed class. Plaintiffs' interest does not conflict with the interests of the proposed class they seek to represent. Plaintiffs have retained lawyers who are competent and experienced in class action and insurance litigation.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the members of the proposed class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the proposed class while recognizing the risks associated with litigation.

57.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joining all proposed members of the proposed class in one action is impracticable and prosecuting individual actions is not feasible. The size of the individual claims is likely not large enough to justify filing a separate action for each claim. For many, if not most, members of the proposed class, a class action is the only procedural mechanism that will afford them an opportunity for legal redress and justice. Even if members of the proposed class had the resources to pursue individual litigation, that method would be unduly burdensome to the courts in which such cases would proceed. Individual litigation exacerbates the delay and increases the

expense for all parties, as well as the court system. Individual litigation could result in inconsistent adjudications of common issues of law and fact.

58.    In contrast, a class action will minimize case management difficulties and provide multiple benefits to the litigating parties, including efficiency, economy of scale, unitary adjudication with consistent results and equal protection of the rights of Plaintiffs and members of the proposed class. These benefits would result from the comprehensive and efficient supervision of the litigation by a single court.

59.    Questions of law or fact common to Plaintiffs and members of the proposed class, including those identified above, predominate over questions affecting only individual members (if any), and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will allow a large number of similarly situated consumers to prosecute their common claims in a single forum, simultaneously, efficiently, and without the necessary duplication of effort and expense that numerous individuals would require. Further, the monetary amounts due to many individual members of the proposed class is likely to be relatively small, and the burden and expense of individual litigation would make it difficult or impossible for individual members of the proposed class to seek and obtain relief.  On the other hand, a class action will serve important public interests by permitting consumers harmed by National Security's unlawful practices to effectively pursue recovery of the sums owed to them, and by deterring further unlawful conduct.  The public interest in protecting the rights of consumers favors disposition of the controversy in the class action form.

60.    Class certification is further warranted because National Security has acted or refused to act on grounds that apply generally to the class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the class as a whole.

61.    Plaintiffs may seek, in the alternative, certification of issues classes.

62.    Rule 23(c)(4) provides that an action may be brought or maintained as a class action
with respect to particular issues when doing so would materially advance the litigation as a whole.

## COUNT I
## BREACH OF CONTRACT

63.    Plaintiffs restate and incorporate by reference all preceding allegations.

64.    National Security entered into policies of insurance with Republic's assignor,
Chandler, and members of the proposed class. These insurance policies govern the relationship
between National Security and Republic's assignor, Chandler, and members of the proposed class,
as well as the manner in which claims for covered losses are handled.

65.    The policies of insurance between National Security and Republic's assignor,
Chandler, and the other members of the proposed class are binding contracts under Arkansas,
Mississippi and Tennessee law, supported by valid consideration in the form of premium payments
in exchange for insurance coverage.

66.    National Security drafted the insurance policies at issue, which are essentially
identical in all respects material to this litigation concerning the withholding of labor as
depreciation.

67.    In order to receive ACV claim payments, Republic's assignor, Chandler, and the
putative class members complied with all material provisions and performed all of their respective
duties with regard to their insurance policy.

68.    National Security breached its contractual duty to pay Republic's assignor and now
Republic, Chandler, and members of the proposed class the ACV of their claims by unlawfully
withholding labor costs as described herein.

69.     National Security's actions in breaching its contractual obligations to Republic's assignor and now Republic, Chandler, and members of the proposed class benefitted and continue to benefit National Security. Likewise, National Security's actions damaged and continue to damage Plaintiffs and members of the proposed class.

70.     National Security's actions in breaching its contractual obligations, as described herein, are the direct and proximate cause of damages to Plaintiffs and members of the proposed class.

71.     In light of the foregoing, Plaintiffs and members of the proposed class are entitled to recover damages sufficient to make them whole for all amounts National Security unlawfully withheld from their ACV payments, including prejudgment interest as may be allowed by law.

**COUNT II**
**DECLARATORY JUDGMENT AND RELIEF**

72.     Plaintiffs restate and incorporates by reference all preceding allegations.

73.     This Court is empowered by the Declaratory Judgment Act as codified at 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 to declare the rights and legal relations of parties regardless of whether further relief is or could be claimed.

74.     A party may seek to have insurance contracts, before or after a breach, construed to obtain a declaration of rights, status, and other legal relations thereunder adjudicated.

75.     Republic's assignor and now Republic, Chandler, and members of the proposed class have all complied with all relevant conditions precedent in their contracts.

76.     Plaintiffs seek, individually and on behalf of the proposed class, a declaration that National Security's property insurance contracts prohibit the withholding of labor costs as described herein when adjusting losses under the methodology employed herein.

77.     Plaintiffs further seek, individually and on behalf of the proposed class, any and all

13

other relief available under the law arising out of a favorable declaration.

78.     Plaintiffs and members of the proposed class have suffered injuries.

## JURY DEMAND

79.     Plaintiffs hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

1.      Enter an order certifying this action as a class action, appointing Plaintiffs as the representative of the class, and appointing Plaintiffs' attorneys as counsel for the class;

2.      Enter a declaratory judgment, declaring that National Security's withholding of labor costs as depreciation is contrary to and breaches the insurance policy issued to Republic's assignor, Chandler, and members of the class;

3.      Enter a declaration, and any preliminary and permanent injunction and equitable relief against National Security and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the policies, practices, customs, and usages complained of herein, as may be allowed by law;

4.      Enter an order that National Security specifically perform and carry out policies, practices, and programs that remediate and eradicate the effects of its past and present practices complained of herein;

5.      Award compensatory damages for all sums withheld as labor costs under the policy, plus prejudgment interest on all such sums, to Plaintiffs and members of the proposed class;

8.     Award costs, expenses, and disbursements incurred herein by Plaintiffs and members of the proposed class as may be allowed by law, including but not limited to amounts available under the common fund doctrine;

9.     Pre- and Post-Judgment interest; and

10.    Grant such further and additional relief as the Court deems necessary and proper.

GILBERT McWHERTER
SCOTT BOBBITT PLC

By:  _/s/ J. Brandon McWherter_____
J. BRANDON McWHERTER  #21600
JONATHAN L. BOBBITT #23515
EMILY S. ALCORN #33281
341 Cool Springs Blvd, Suite 230
Franklin, TN  37067
(615) 354-1144
bmcwherter@gilbertfirm.com
jbobbitt@gilbertfirm.com
ealcorn@gilbertfirm.com

ERIK D. PETERSON (KY Bar 93003)
(to be admitted *pro hac vice*)
MEHR, FAIRBANKS & PETERSON
 TRIAL LAWYERS, PLLC
201 West Short Street, Suite 800
Lexington, KY 40507
(859) 225-3731
edp@austinmehr.com

T. JOSEPH SNODGRASS
(to be admitted *pro hac vice*)
LARSON • KING, LLP
30 East Seventh St., Suite 2800
St. Paul, MN  55101
(651) 312-6500
jsnodgrass@larsonking.com

*Attorneys for Plaintiffs and*
*Putative Class Representatives*